| | |
|---|---|
| JAIME MEDINA<br>4700 Bel Pre Road<br>Rockville, Maryland 20853, | *  IN THE<br><br>*  CIRCUIT COURT |
| Plaintiff, | *  FOR |
| v. | *  MONTGOMERY COUNTY, MD |
| L&M CONSTRUCTION, INC.<br>8529 Ashwood Drive<br>Capitol Heights, Maryland 20743, | *  CASE NO. _____<br><br>* |
| Serve on Resident Agent:<br>Leela Oudit<br>909 Strausberg Street<br>Accokeek, Maryland 20607 | *<br><br>*<br><br>* |
| Defendant. | * |

\* \* \* \* \* \* ooo0ooo \* \* \* \* \* \*

## COMPLAINT

Plaintiff Jaime Medina files this Complaint against Defendant L&M Construction, Inc. and alleges as follows:

### PARTIES

1.     Plaintiff Jaime Medina is U.S. citizen and a resident of Rockville, Maryland. Medina was, at all relevant times, employed by Defendant until he was unlawfully terminated. Medina is transsexual and, at all relevant times, has been transitioning from the male to female sex and gender.

2.     Defendant L&M Construction, Inc. ("L&M") is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Prince George's County, Maryland.  L&M Construction is a major construction company that, on information and belief, employs more than 15 employees and has been the recipient of more than $78.5 million in federal contracts.

## STATEMENT OF FACTS

3.    In or about January 2007, Medina began employment with L&M, working as an asbestos abatement worker on several projects, including one at the National Institute of Standards and Technology ("NIST") in Gaithersburg, Maryland.   Medina's work on NIST projects was overseen by NIST employee, Sharon Ray.

4.    In or about July 2011, Medina received a raise of $1.50 per hour after completing a training course that he was instructed to take so that he could assist another L&M Construction employee, Maria Teresa Garces, in her supervisory duties.  Subsequently, Ray sent emails to L&M executives praising Teresa for work that Ray knew was completed by Medina.  Leela Oudit, CEO of L&M, and other L&M managers told Medina throughout the course of his employment that his work was good.

5.    In or about September 2011, Alan Auslaender, then-Vice President of L&M, began sexually harassing Medina, both verbally and physically.   On the first occasion, Auslaender approached Medina on the NIST job site and suggested that Medina could make more money if he consented to have a sexual relationship with him.  When Medina refused, Auslaender exposed his genitals. Medina was greatly upset by this.

6.    On a separate occasion thereafter, Auslaender saw Medina on the job site and pulled him into a conference room to have a discussion. Auslaender again propositioned Medina by asking if he had thought about his offer to pay Medina more if he had sex with him.  When Medina again refused, Auslaender groped Medina, made a sexually charged remark, and again exposed himself. Medina managed to get away. Hours later, Auslaender called Medina and said that it was for Medina's own good to think about his offer and Medina's job.  At this point,

Auslaender knew that Medina was sending a lot of money to his drastically ill mother to help her. Medina was very upset and felt manipulated and trapped.

7.    In or about January 2012, Auslaender accosted Medina while Medina was working on the NIST job site. Auslaender asked whether Medina had a "partner" and he responded that he did. Auslaender persisted anyway, making sexually suggestive remarks and that he could make more money "if he did the same thing as Teresa and Sharon" – a reference to the openly sexual relationship between Ray and L&M employee, Maria Teresa Garces. Medina refused. Auslaender told Medina to think carefully about his proposition given that Medina's mother was so sick. Auslaender then grabbed Medina and hugged him forcefully before Medina was able to leave. Medina was so upset that she left the trailer in tears.

8.    Auslaender's course of harassment became so upsetting that Medina would become panicked when he saw Auslaender. When co-workers would see how upset Medina was and ask why he was upset, Medina would tell them that Auslaender was sexually harassing him. To this day, memories of the harassment cause Medina great emotional anguish for which professional counseling and medication is necessary.

9.    On or about March 9, 2012, Garces groped an L&M employee named Betis Barrientos, whom she was supervising. In front of other employees, Garces unzipped the fly to her pants while Barrientos was bent down near her and exclaimed something to the effect of: "Watch Betis perform oral sex on me." Ray knew of the incident, but refused to take any action against her sexual partner, Garces.

10.    On or about March 16, 2012, at Barrientos's request, Medina accompanied Barrientos to the CEO's office to assist in reporting the incident. The CEO, Oudit, was not in the

3

office, so Medina and Barrientos explained the situation to Oudit's secretary, who took notes to provide to Oudit.

11.     On or about March 17, 2012, Auslaender again accosted Medina to join him in a conference room. Auslaender confronted Medina about accompanying Barrientos to help make a complaint for Maria Teresa Garces's harassment of Barrientos. Auslaender said he would not forgive the reporting of problems with Garces, which in turn caused problems for Ray, the client's liaison with L&M who was having a sexual relationship with Garces. Auslaender then renewed his proposition to pay Medina a higher wage in return for sex. After Medina refused, Auslaender groped Medina. The next day, Auslaender fired Medina.

12.     Medina also attempted to approach Oudit about why he was fired. Oudit would not see him, but Oudit's secretary passed on a message to Medina that he should not tell anyone, including the union that was attempting to organize the L&M workers, what had been going on, for the good of the company and his own good.

13.     In or about October 2012, the U.S. Department of Labor Office of Federal Contract Compliance Programs ("OFCCP"), which enforces federal laws regarding workplace protections amongst federal contractors, began an investigation into suspected illegal employment practices at L&M.

14.     The OFCCP ultimately concluded that L&M was guilty of 20 violations of federal laws regarding workplace protections, including two discriminatory violations. L&M's illegal treatment of Medina was among the violations the OFCCP found had occurred.

15.     After the OFCCP investigation revealed the harassment by Auslaender, L&M fired him.

4

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     Medina has exhausted his administrative remedies.  On or about June 15, 2012, he filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a timely administrative charge of sex, retaliation, and other discrimination against L&M.  More than 180 days have passed since that charge was filed and the EEOC has made no determination regarding the charge.  Medina, through his counsel, have made repeated requests for a Notice of Right to Sue, but have received no response from the EEOC.

### COUNT I
### (*Quid Pro Quo* Sexual Harassment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2)

17.     The allegations contained in the preceding paragraphs are incorporated by reference.

18.     L&M's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which makes unlawful discrimination against employees on the basis of sex.  Sex discrimination includes sexual harassment.  One type of sexual harassment is *quid pro quo* harassment, where sexual consideration is demanded in exchange for employment benefits.

19.     Medina is transsexual and, at all relevant times, has been transitioning from the male to female sex and gender.  Medina thus belongs to a protected group.

20.     On at least four separate occasions between September 2011 and March 2012, Medina was subject to and repeatedly rejected then-Vice President Auslaender's unwelcome requests for sexual favors in exchange for employment benefits such as a raise in pay.

21.     Because of the sexual nature of Auslaender's advances, the harassment was based on sex.

5

22.     Medina was subject to adverse changes to his work schedule and, thus, his compensation, and also was terminated from his employment because he rejected Auslaender's advances. A week after his termination, Auslaender told Medina he would not have been fired had he acquiesced to Auslaender's sexual advances.

23.     Because Auslaender was Medina's supervisor and an L&M corporate executive acting as an agent for L&M, L&M knew or should have known of the harassment. Auslaender never stopped his sexual advances and L&M took no effective remedial action.

24.     As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

WHEREFORE, Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT II
### (Hostile Work Environment Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2)

25.     The allegations contained in the preceding paragraphs are incorporated by reference.

26.     L&M's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which makes unlawful discrimination against employees on the basis of sex. Sex discrimination includes sexual harassment. One type of sexual harassment is harassment that creates an offensive or hostile work environment.

27.    On at least four separate occasions between September 2011 and March 2012, Medina was subject to and repeatedly rejected then-Vice President Auslaender's unwelcome sexual remarks, unwelcome sexual contact, and unwelcome requests for sexual favors in exchange for employment benefits. Each of these incidents was very upsetting to Medina, a feeling that was exacerbated by Auslaender's position of power and the fact that each of the encounters happened behind closed doors where others could not intercede to protect him.

28.    Because of the sexual nature of Auslaender's advances, the harassment was based on sex.

29.    Medina was subject to adverse changes to his work schedule and, thus, his compensation, and also was terminated from his employment because he rejected Auslaender's advances.

30.    Because Auslaender was Medina's supervisor and an L&M corporate executive acting as an agent for L&M, L&M knew or should have known of the harassment. Auslaender never stopped his sexual advances and L&M took no effective remedial action.

31.    As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

    **WHEREFORE**, Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT III
### *(Quid Pro Quo* Sexual Harassment in Violation of
### Md. Code Ann., State Gov't § 20-606)

32.     The allegations contained in the preceding paragraphs are incorporated by reference.

33.     L&M's conduct as herein alleged violated Md. Code Ann., State Gov't § 20-606(a)(1)(i), which makes unlawful discrimination against employees on the basis of sex. Sex discrimination includes sexual harassment. One type of sexual harassment is *quid pro quo* harassment, where sexual consideration is demanded in exchange for employment benefits.

34.     Medina is transsexual and, at all relevant times, has been transitioning from the male to female sex and gender. Medina thus belongs to a protected group.

35.     On at least four separate occasions between September 2011 and March 2012, Medina was subject to and repeatedly rejected then-Vice President Auslaender's unwelcome requests for sexual favors in exchange for employment benefits such as a raise in pay.

36.     Because of the sexual nature of Auslaender's advances, the harassment was based on sex.

37.     Medina was subject to adverse changes to his work schedule and, thus, his compensation, and also was terminated from his employment because he rejected Auslaender's advances. A week after his termination, Auslaender told Medina he would not have been fired had he acquiesced to Auslaender's sexual advances.

38.     Because Auslaender was Medina's supervisor and an L&M corporate executive acting as an agent for L&M, L&M knew or should have known of the harassment. Auslaender never stopped his sexual advances and L&M took no effective remedial action.

39.     As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

**WHEREFORE,** Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT IV
### (Hostile Work Environment Sexual Harassment in Violation of Md. Code Ann., State Gov't § 20-606)

40.     The allegations contained in the preceding paragraphs are incorporated by reference.

41.     L&M's conduct as herein alleged violated Md. Code Ann., State Gov't § 20-606(a)(1)(i), which makes unlawful discrimination against employees on the basis of sex. Sex discrimination includes sexual harassment. One type of sexual harassment is harassment that creates an offensive or hostile work environment.

42.     On at least four separate occasions between September 2011 and March 2012, Medina was subject to and repeatedly rejected then-Vice President Auslaender's unwelcome sexual remarks, unwelcome sexual contact, and unwelcome requests for sexual favors in exchange for employment benefits. Each of these incidents was very upsetting to Medina, a

9

feeling that was exacerbated by Auslaender's position of power and the fact that each of the encounters happened behind closed doors where others could not intercede to protect him.

43.     Because of the sexual nature of Auslaender's advances, the harassment was based on sex.

44.     Medina was subject to adverse changes to his work schedule and, thus, his compensation, and also was terminated from his employment because he rejected Auslaender's advances.

45.     Because Auslaender was Medina's supervisor and an L&M corporate executive acting as an agent for L&M, L&M knew or should have known of the harassment. Auslaender never stopped his sexual advances and L&M took no effective remedial action.

46.     As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

**WHEREFORE**, Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT V
**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3)**

47.     The allegations contained in the preceding paragraphs are incorporated by reference.

48.    L&M's conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which makes unlawful retaliation against employees for opposing an unlawful employment practice.

49.    Medina engaged in protected activity by reporting and helping to report to L&M's CEO the sexual harassment of his co-worker, Betis Barrientos.   Medina also engaged in protected activity by reporting to co-workers Auslaender's sexual harassment of him.

50.    Medina was terminated the day after he reported the sexual harassment of his co-worker, Betis Barrientos, and within several months of reporting his own harassment to his co-workers.

51.    Medina's protected activity and his termination are causally related.   The termination took place the day after he reported the sexual harassment of his co-worker, Betis Barrientos and within several months of reporting his own harassment to his co-workers. Further, then-Vice President Auslaender, the supervisor who terminated Medina, said he would not forgive the reporting of problems with Garces, which in turn caused problems for Ray, the client's liaison with L&M who was having a sexual relationship with Garces.

52.    As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

WHEREFORE, Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT VI
### (Retaliation in Violation of Md. Code Ann., State Gov't § 20-606)

53.    The allegations contained in the preceding paragraphs are incorporated by reference.

54.    L&M's conduct as herein alleged violated Md. Code Ann., State Gov't § 20-606(f)(1), which makes unlawful retaliation against employees for opposing an unlawful employment practice.

55.    Medina engaged in protected activity by reporting and helping to report to L&M's CEO the sexual harassment of his co-worker, Betis Barrientos.    Medina also engaged in protected activity by reporting to co-workers Auslaender's sexual harassment of him.

56.    Medina was terminated the day after he reported the sexual harassment of his co-worker, Betis Barrientos, and within several months of reporting his own harassment to his co-workers.

57.    Medina's protected activity and his termination are causally related.    The termination took place the day after he reported the sexual harassment of his co-worker, Betis Barrientos and within several months of reporting his own harassment to his co-workers. Further, then-Vice President Auslaender, the supervisor who terminated Medina, said he would not forgive the reporting of problems with Garces, which in turn caused problems for Ray, the client's liaison with L&M who was having a sexual relationship with Garces.

58.    As a direct, proximate, and consequential result of L&M's unlawful conduct, Medina has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

**WHEREFORE,** Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon

12

information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus

punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees,

and costs of suit; and award such other and further relief as the interests of justice may require.

## COUNT VII
### (Wrongful Termination)

59.     The allegations contained in the preceding paragraphs are incorporated by

reference.

60.     L&M's conduct as herein alleged constitutes a wrongful termination under

Maryland common law.

61.     L&M terminated Medina from his employment in violation of several clear

mandates of Maryland public policy.

62.     It is Maryland public policy that prostitution, or the "performance of a sexual act,

sexual contact, or vaginal intercourse for hire," and the solicitation of prostitution are illegal.

Md. Code Ann., Criminal Law §§ 11-301(c), 306(a)(1), 306(a)(5).

63.     Auslaender's requests for sexual favors in exchange for employment benefits,

such as a raise in pay, constitute solicitation for prostitution.

64.     Auslaender terminated Medina's employment, in violation of Maryland public

policy, because Medina rejected his unwelcome requests for sexual favors.  The termination

happened within several months of the rejected advances and a week after his termination,

Auslaender told Medina he would not have been fired had he acquiesced to Auslaender's sexual

advances.

65.     It is Maryland public policy that sexual harassment is illegal.  Md. Code Ann.,

State Gov't § 20-606(a)(1)(i).

66.     L&M employee Maria Teresa Garces sexually harassed another L&M employee, Betis Barrientos. At Barrientos's request, Medina accompanied Barrientos to the CEO's office and assisted in reporting the most recent incident and a course of ongoing harassment prior to that incident.

67.     Auslaender terminated Medina's employment, in violation of Maryland public policy, because Medina assisted in reporting Garces's sexual harassment of Barrientos. The termination occurred just one day after Medina reported the sexual harassment of Barrientos.

68.     As a direct, proximate, and consequential result of L&M's wrongful termination of Medina, he has been left without employment, deprived of wages and benefits, suffered emotional distress and humiliation, sustained damage to his reputation, and has otherwise been damaged.

**WHEREFORE**, Medina requests that judgment be entered in his favor and against L&M for compensatory damages in an amount unknown at this time with precision, but, upon information and belief, not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages of One Hundred Thousand Dollars ($100,000.00), reasonable attorneys' fees, and costs of suit; and award such other and further relief as the interests of justice may require.

### REQUEST FOR A JURY TRIAL

Plaintiff requests that this action be tried by a jury.

C. Christopher Brown
Gregory P. Care
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Phone: 410-962-1030
Fax:    410-385-0869
ccb@browngold.com
gpc@browngold.com

*Attorneys for Plaintiff*